424 F.2d 1171
 Phyllis S. DREYFUS and Diane E. Dreyfus, Plaintiffs-Appellants,
v.
The FIRST NATIONAL BANK OF CHICAGO, as Trustee of the Philip
S. Dreyfus Trustcreated under the Will of Moise Dreyfus,
Deceased, of August 1, 1935, and knownas Trust No. 33705,
The First National Bank of Chicago, as Trustee of thePhilip
S.Dreyfus Trust dated August 5, 1935 and known as Trust No.
33703, and The FirstNational Bank of Chicago, as Trustee of
the Carolyn S. Dreyfus Trust, datedDecember 29, 1937, and
known as Trust No. 33704, and Michael Reese Hospital
andMedical Center,a Not-for-Profit Corporation, Defendants-Appellees.
 No. 17474.
 United States Court of Appeals, Seventh Circuit.
 April 27, 1970, As Corrected on Denial of Rehearing May 14, 1970.
 
 Samuel M. Lanoff, John A. Cook, Chicago, Ill., for plaintiffs-appellants.
 George V. Bobrinskoy, Jr., Burton E. Glazov, Chicago, Ill., for defendants-appellees; Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel.
 Before KNOCH, Senior Circuit Judge, and CUMMINGS and KERNER, Circuit judges.
 KNOCH, Senior Circuit Judge.
 
 
 1
 The plaintiffs-appellants, Phyllis S. Dreyfus and Diane E. Dreyfus, filed their Complaint in the United States District Court claiming the principal of the three trusts here involved, under the Will of their late father Philip Dreyfus who died January 19, 1961.
 
 
 2
 The defendant-appellee, The First National Bank of Chicago, was trustee under Trusts numbered 33703, 33704 and 33705. The principal has been distributed to the defendant-appellee Michael Reese Hospital and Medical Center.
 
 
 3
 Trust 33703 was created by the father of the plaintiffs, Philip Dreyfus, as donor, on August 5, 1935, as a trust for the benefit of himself and his descendants. On October 25, 1955, Philip and his wife Dorris Roberts Dreyfus were divorced. Plaintiffs allege in their Complaint that the proceedings were attended with bitterness between the parties. The plaintiffs were then twelve and nine years of age. On March 3, 1959, Philip Dreyfus, their father, amended Trust 33703 to provide for payment of $200 per month for the use and benefit of his daughters. These payments were made until his death on January 19, 1961.
 
 
 4
 Trust 33704 was also an irrevocable trust set up by Carolyn Dreyfus, Philip's mother, on December 29, 1937, for the benefit of Philip and his descendants.
 
 
 5
 Trust 33705 was a testamentary trust established under the Will, dated August 1, 1935, of Moise Dreyfus, father of Philip and grandfather of the plaintiffs.
 
 
 6
 Basically all three trust instruments provide that following the death of Philip the principal is to be distributed as he shall appoint by will and, in default of appointment, to his then living issue.
 
 
 7
 Philip's Will is dated November 10, 1958. The Divorce Decree and a subsequent Order were exhibits in other proceedings, portions of which were included in the Appendix to this appeal. These documents indicate that at the date of the Will the plaintiffs, then minor children of fifteen and twelve years were residing with their mother in California contrary to the provisions of the Divorce Decree which awarded custody to their father.
 
 
 8
 The pertinent portions of Philip's Will appear in the Complaint as follows:
 
 
 9
 First: I direct that all of my just debts and funeral expenses be paid as soon after my death as conveniently may be.
 
 
 10
 Second: I give and bequeath all of my clothes, jewelry, personal effects and automobiles and accessories which I may own at the date of my death, share and share alike to such of my nephew Martin Raymond Rosenthal, and my niece, Louise Dorothy Rosenthal, as shall survive me.
 
 
 11
 Third: Having in mind the children of my former marriage, and intending to limit my testamentary provision for them to that stated in this paragraph, I do give and bequeath the sum of One Thousand Dollars ($1,000.00) to my daughter, Phyllis S. Dreyfus, if she shall survive me, and I do give and bequeath the sum of One Thousand Dollars ($1,000.00) to my daughter, Diane E. Dreyfus, if she shall survive me.
 
 
 12
 Fourth: All the rest, residue and remainder of my estate remaining after carrying out the foregoing provisions of this, my Last Will and Testament, of every kind, nature and sort whatsoever, real and personal, legal and equitable, and wheresoever situated, which I may own, possess, hold, be seized of or entitled to at the date of my death, together with the rents, income, profits, interest and increment thereof and which may arise or accrue therefrom, and including lapsed bequests, and including, without limitation, all properties over which I may have a power of appointment (and I do expressly intend hereby to exercise all powers of appointment which I may have at the time of my death), after deducting therefrom claims, administration expenses (including Executor's and Attorneys' fees) and all taxes whatever, I give, devise and bequeath unto Michael Reese Hospital of Chicago, an Illinois corporation not for profit, having its principal office in Chicago, Illinois, to be used by it for research purposes; and I do express my desire that Michael Reese Hospital of Chicago shall use my said bequest, to the maximum extent deemed proper by it, for the payment of salaries and other compensations to persons employed by it in the pursuit of medical research.
 
 
 13
 Count I of the Complaint is based on the theory that the wording in the Fourth article of the Will:
 
 
 14
 All the rest, residue and remainder of my estate remaining after carrying out the foregoing provisions of this, my Last Will and Testament. * * *
 
 
 15
 provides a condition precedent to the exercise of the power of appointment. The Complaint asserts that the bequest of $1000 to each of the plaintiffs is one of those foregoing provisions and that it cannot be carried out because, apart from the corpus of the trusts, Philip's estate is now insolvent, a fact which plaintiffs did not learn until they received a letter to that effect, dated May 27, 1968, from The First National Bank.
 
 
 16
 Thus plaintiffs argue that the monetary legacies cannot be paid, the 'foregoing provisions' cannot be carried out, and no property passes under the Fourth article of the Will; there is a default of appointment for each of the trusts and the principal passes to Philip's lawful surviving issue.
 
 
 17
 This result, as the District Judge held, would be contrary to the manifest intent of the testator set out in the Third article of his Will expressly limiting testamentary provision for plaintiffs to $2000.
 
 
 18
 To act on plaintiffs' theory would require the Court to accept plaintiffs' rather strained interpretation of the Executor's Inventory in the Probate Court proceedings, an exhibit in the District Court case, which shows Trust 33703 as an asset. Plaintiffs argue that the trusts cannot pay their bequests nor can the Probate Court authorize such payment because legacies are not claims, taxes or administrative expenses, and the trusts (and the claim scheduled in the inventory) refer only to an agreement to pay claims, taxes and administrative expenses. However, the record includes an affidavit of the Director of Michael Reese indicating that in accepting the principal of Trust 33703, Michael Reese agreed to pay claims, debts and expenses arising out of Philip's probate estate to the extent that the trust would have been obligated but specifically stating that:
 
 
 19
 In keeping with the foregoing Michael Reese expressly represents that it will cause to be paid all monetary bequests contained in the will of Philip S. Dreyfus.
 
 
 20
 We find untenable the plaintiffs' theory that by this action Michael Reese is circumventing the provisions of their father's Will.
 
 
 21
 A will must be construed to achieve the intent of the testator. Rosenthal v. First National Bank, (Phyllis S. Dreyfus, et al., appellants) 1968, 40 Ill.2d 266, 276, 239 N.E.2d 826, 831. Baum v. Continental Illinois National Bank, 7 Cir., 1956, 230 F.2d 377, 381 and cases there cited.
 
 
 22
 Plaintiffs argue that the 'conditions' set out in the Fourth article should be 'strictly enforced' to avoid the 'unconscionable exercise' of the power. But the testator obviously intended that 'unconscionable exercise.' It was his clear purpose to limit testamentary provision for his daughters to $1000 each. We agree that:
 
 
 23
 The cardinal rule of testamentary construction is to ascertain the intention of the testator from an examination of the will as a whole and to give effect thereto unless such intent is contrary to law or public policy. Marshall v. Northern Trust Co., 1961, 22 Ill.2d 391, 394, 176 N.E.2d 807, 809, and cases there cited.
 
 
 24
 In effect plaintiffs do contend that this Will violates public policy in their Count III by reference to the Probate Code of the State of California, where plaintiffs are residents, which limits to one-third of the estate the amount a testator may bequeath to charity in preference to his spouse, descendants or ancestors. Philip Dreyfus was a resident and domicilliary of Illinois. His Will has been admitted to probate there. His estate is being administered there. The trusts were held by an Illinois trustee. The charity to which he appointed them is an Illinois charity. The California statutes do not affect testamentary succession of non-California personal property of non-Californians. Schultz v. Chicago City Bank and Trust Co., 1943, 384 Ill. 148, 51 N.E.2d 140. See also In re Layton's Estate, 1933, 217 Cal. 451, 19 P.2d 793, 798-799, construing the predecessor to this statute as limited in the case of non-California residents to property within the State of California. No such prohibitory limitation exists in Illinois law or public policy.
 
 
 25
 The obvious intent of the testator was that the monetary dispositions of the earlier articles should be paid out of the trusts if his other assets proved insufficient. We cannot agree that it was his intent to have his exercise of all his powers of appointment nullified and his expressed wish that the residue of his estate, including all property over which he had a power of appointment, go to Michael Reese, be frustrated rather than invade the trust assets of approximately $2 million to pay specific bequests of $2000.
 
 
 26
 Although proceedings are still pending on the Estate of Philip Dreyfus in the Probate Court, plaintiffs assert that the question of the insolvency of the estate is an issue before this Court as it has been asserted in their affidavit (supported by the Executor's letter to that effect) and uncontradicted by any counteraffidavit. We cannot agree that the summary judgment of dismissal entered by the District Court was therefore rendered improper.
 
 
 27
 Count II alleged that the purported exercise of the power of appointment failed because of the limitation of the power to use in religious, charitable, literary or educational purposes, whereas Philip's Will speaks of use for research, and, further, that the Charter of Michael Reese did not authorize research. The District Court adopted the findings of the Court in Michael Reese Hospital and Medical Center v. The Mutual Life Insurance Company, No. 65 C. 1490, wherein analysis of Michael Reese's Charter showed its purpose to cure and prevent sickness and disease of which purpose medical research was an intrinsic part. Plaintiffs have not argued this point in their brief.
 
 
 28
 In Count IV, plaintiffs asserted a claim to savings bonds in the amount of $150,000 allegedly converted by Philip Dreyfus. The executor of the Estate is not a party. Plaintiffs pray that if the powers of appointment are held to have been effectively exercised, then the principal of Trust 33703, first, and then that of 33705 and 33704, in turn, be charged with the sum due plaintiffs for these bonds. Noting that a claim for approximately the same sum was pending in the Probate Court, the District Judge abstained from taking jurisdiction. Plaintiffs argue that a Court having once assumed jurisdiction should grant full relief and that this is a case where justice dictates that the District Court should assume jurisdiction, citing Markham v. Allen (on which defendants also rely, among other cases) 1946, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256, where the Supreme Court in reversing a Court of Appeals decision that the District Court was without jurisdiction in the matter, said that federal courts do have jurisdiction to entertain suits in favor of creditors, legatees, heirs and other claimants against an estate to establish their claims so long as the Federal Court did not interfere with probate proceedings. We are satisfied, however, that no abuse of discretion has occurred in this case where the District Court merely abstained from assuming jurisdiction over a matter already pending in a state court.
 
 
 29
 The District Judge decided that the claims asserted against Trust 33705 were also barred on the ground of res judicata, Rosenthal v. First National Bank of Chicago (Phyllis S. Dreyfus, et al., appellants) 40 Ill.2d 266, 239 N.E.2d 826, which affirmed the Illinois Appellate Court's decision reported at 88 Ill.App.2d 82, 232 N.E.2d 265, directing distribution of Trust 33705 to Michael Reese. While the plaintiff in that case was Philip's sister, the plaintiffs here filed an answer, counterclaim and motion for summary judgment in that case. The basis for their claim was that Philip predeceased his mother Carolyn and therefore could not make an effective exercise of the power of appointment. This was an in rem action and defendants contend that it was incumbent on plaintiffs to present all their claims and legal theories at that time. Plaintiffs, as indicated, reply that they learned of the insolvency of their father's Estate too late to assert the theory on which they now contend that the apparent exercise of the power was ineffective.
 
 
 30
 Plaintiffs also contend that res judicata is not applicable because the parties differ. But plaintiffs and Michael Reese were parties and the issue of the distribution of the res was involved in both these actions, including the issue of the effectiveness of Philip's exercise of the powers of appointment. Newly discovered evidence has been held not to prevent the application of res judicata, People ex rel. Endicott v. Prather, 1931, 343 Ill. 443, 447, 175 N.E. 658, and it is no objection that the former action included parties not joined in the present action, or vice versa, so long as the judgment was rendered on the merits, the cause of action was the same and the party against whom the doctrine is asserted was a party to the former litigation. Hummel v. Equitable Life Assur. Soc., 7 Cir., 1945, 151 F.2d 994, 996. In view of our conclusions stated above, we will not discuss this aspect of the case in detail, but we find no error in the District Court's ruling on this point.
 
 
 31
 We have carefully considered all other points and authorities cited by the plaintiffs but find them unpersuasive. The judgment of the District Court is affirmed.
 
 
 32
 Affirmed.